UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CLINTON T. MATTHEWS,<br><br>    Plaintiff,<br><br>v.<br><br>IDAHO STATE CORRECTIONAL INSTITUTION; TYRELL DAVIS, in his individual capacity only; RANDALL VALLEY, in his individual capacity only, and JOHN/JANE DOES I-X, whose true identities are presently unknown.<br><br>    Defendants. | Case No. 1:23-cv-00435-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendants Idaho State Correctional Institution ("ISCI"), Tyrell Davis, Randall Valley, and John/Jane Does I-X's Motion for Summary Judgment. Dkt. 18. Plaintiff Clinton Matthews filed an opposition to Defendants' Motion for Summary Judgment (Dkt. 27) and Defendants' replied (Dkt. 30).

The Court held oral argument on April 14, 2026, and took the matters under advisement. Dkt. 32. Upon review, and for the reasons set forth below, the Court GRANTS Defendants' Motion.

## II. BACKGROUND

### A. Procedural

Plaintiff filed his Complaint and Demand for Jury Trial on October 4, 2023. Dkt. 1. Defendants filed their Answer on December 20, 2023. Dkt. 3. After discovery was

MEMORANDUM DECISION AND ORDER - 1

complete, Defendants filed a Motion for Summary Judgment on May 25, 2025. Dkt. 18. Plaintiff filed a Statement of Disputed Facts in Opposition to Defendants' Motion for Summary Judgment on July 13, 2025 (Dkt. 24), followed by a Memorandum in Opposition on July 14, 2025. Dkt. 27. On August 1, 2025, Defendants filed their Reply Brief in Support of Motion for Summary Judgment. Dkt. 30.

In Plaintiff's Complaint, he alleges the following causes of actions: violation of his civil rights pursuant to 42 U.S.C. § 1983, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. Dkt. 1, at 17–22. In response to Defendants' Motion for Summary Judgment, Plaintiff abandoned all his state tort law claims against all Defendants as well as all claims against ISCI, including the 42 U.S.C. § 1983 claim. Dkt. 27, at 2–3. At oral argument, Plaintiff further agreed there are no facts to support Defendant Valley's inclusion and that summary judgment is appropriate as to him.

There is, therefore, only one remaining issue before the Court for summary judgment—Plaintiff's § 1983 claim against Defendant Warden Tyrell Davis.

**B. Factual**

Plaintiff was incarcerated at ISCI located in Kuna, Idaho, from March 21, 2021, until March 10, 2022.[1] ISCI is an Idaho Department of Corrections ("IDOC") operated medium security prison. On March 10, 2022, Plaintiff was transferred to Idaho State Correctional Center ("ISCC"). Plaintiff has been diagnosed with Major Depressive Disorder and Borderline Personality Disorder. Dkt. 1, at 3. While at ISCI, Plaintiff was

---

[1] Plaintiff is serving consecutive sentences for multiple felony convictions involving sexual abuse and lewd conduct with a minor child under sixteen.

housed in Unit 16, a behavioral health unit ("BHU") where he received mental health services. *Id*. Plaintiff was assigned a cellmate—"C.J.H."—who had recently turned 18. Dkt. 18-2, at 4. On June 8, 2021, staff separated C.J.H. and Plaintiff as cellmates. *Id*.

After C.J.H.'s removal, Plaintiff's mental health deteriorated. Sergeant Rogers informed Plaintiff Unit 16 staff were concerned his behavior towards other inmates was of a "grooming" nature. Dkt. 1, at 4. For example, "clinicians documented escalating security concerns" regarding Plaintiff's conduct, "including behavior suggestive of predatory grooming and heightened reactions when boundaries were enforced." Dkt. 18-2, at 5.

On August 16, 2021, Plaintiff was removed from the BHU and transferred to general population, Unit 14. *Id*. Shortly after, a no contact order was issued to prevent Plaintiff from speaking or interacting with C.J.H. Dkt. 1, at 5. On September 24, 2021, staff observed Plaintiff communicating with C.J.H. through a fence in the recreation yard. Dkt. 18-2, at 5. Because of this, Plaintiff was informed he would be facing disciplinary action, was placed in Short-Term Restrictive Housing ("STRH") in Unit 8, and was classified as Segregation Pending Investigation ("SPI"). *Id*.

While being escorted to Unit 8, Plaintiff made suicidal statements to staff. Because of this, Plaintiff was placed on non-acute suicide watch ("NASW") in Unit 16 of the BHU. *Id*. at 6. On September 26, 2021, Plaintiff was cleared from suicide watch and transferred to STRH in Unit 8. *Id*. At this point, no Disciplinary Offense Report ("DOR") was issued as the investigation into the September 24 incident was ongoing. *Id*.

On October 1, 2021, Plaintiff again expressed suicidal ideations and was transferred back to the BHU. Dkt. 30, at 6. Additionally, Plaintiff was issued a DOR, charging him

MEMORANDUM DECISION AND ORDER - 3

with "Unauthorized Communication" for the September 24 incident, and his housing status was changed to Pre-Hearing Segregation ("PHS"). *Id*. On October 2, 2021, Plaintiff was cleared from the BHU and returned to STRH. *Id*.

On October 13, 2021, the DOR was dismissed against Plaintiff due to staff citing an incorrect offense code. Dkt. 18-2, at 6. Plaintiff was released from STRH, however, there were no general population bunks available for Plaintiff, so he remained in Unit 8 on "transit status" until October 22, 2021. *Id*.

Plaintiff now claims Davis violated his constitutional rights because he had to remain in STRH until October 22, 2021, despite being released from STRH. Plaintiff argues this violated ISCI's own policies regarding inmates in solitary confinement. Dkt. 27, at 3. Plaintiff further alleges Davis was deliberately indifferent to his mental health needs and "improperly subjected him to temporary restrictive housing and that he was denied procedural due process in connection with a disciplinary proceeding." *Id*. Finally, Plaintiff asserts Davis is not entitled to qualified immunity.

Davis has moved for summary judgment on Plaintiff's § 1983 claim. Plaintiff counters there are genuine issues of material fact precluding summary judgment and that this remaining claim must be presented to a jury for resolution.

The Court held oral argument on April 14, 2026, and took the matter under advisement.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

MEMORANDUM DECISION AND ORDER - 4

Civ. P. 56(a). The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation modified). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.*

To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation modified). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. DISCUSSION

Davis asserts summary judgment is appropriate for the following reasons. First, he argues the Prison Litigation Reform Act ("PLRA") bars Plaintiff's claim because Plaintiff is seeking money damages for emotional distress without showing any physical injury. Dkt. 30, at 2. Second, Davis asserts Plaintiff did not provide evidence supporting any constitutional violation. *Id*. at 10. And third, Davis invokes qualified immunity. *Id*. The Court will address each in turn.

MEMORANDUM DECISION AND ORDER - 5

**A. The Prison Litigation Reform Act ("PLRA")**

The PLRA states, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ." 42 U.S.C. § 1997e(e). Davis postures that, because Plaintiff has never claimed any physical injury, the PLRA acts as a legal barrier to his § 1983 claim.

Plaintiff counters the PLRA's physical injury requirement does not apply in this case because his "remaining claims seek compensation for the violations of his civil rights rather than physical, personal injuries, and therefore the PLRA's physical injury requirement is not a basis upon which summary judgment may be entered in the case *sub judice*." Dkt. 27, at 5–6.

The Court agrees with Plaintiff. As a purely constitutional challenge under the PLRA, Plaintiff's claim is not barred at the outset. *See Hill v. Reinke*, No. 1:13-cv-00038-BLW, 2014 U.S. Dist. WL 7272939, at *18 n. 4. (explaining that when a prisoner is seeking compensatory damages for violation of the Eight and Fourteenth Amendments, the PLRA physical injury requirement is inapplicable).

That said, as explained below, there have been no facts alleged to support the conclusion that Plaintiff's constitutional rights were violated. Plaintiff has failed to set forth specific facts, supported by evidence, with reasonable particularity that would prevent summary judgment. Davis has carried his burden, as the moving party, to establish there are no genuine disputes of material fact and that Plaintiff's constitutional rights were not violated when he was held in solitary confinement over.

MEMORANDUM DECISION AND ORDER - 6

But to reiterate, as a matter of procedure, the PLRA does not prohibit Plaintiffs' claim against Davis.

## B. Plaintiff's Eighth and Fourteenth Amendment Rights Were Not Violated

Plaintiff argues Davis violated his Eighth and Fourteenth Amendment rights when he was forced to spend an additional ten (10) days in solitary confinement. Dkt. 27, at 7.

The Court begins with a general analysis of the constitutional question and will then discuss how that applies to Davis specifically.

As explained above, after the DOR against Plaintiff was dismissed, he was technically "released" from STRH. However, because there were no general population bunks available, he remained in STRH on "transit status" longer than the 15-day limit set for persons in solitary confinement.

IDOC policy states:

> The time an inmate may be placed in any combination of short-term restrictive housing (SPI, PHS, LTRHRS or disciplinary detention) cannot exceed 15 days based on a single event. The 15-day limit cannot be extended.

Dkt. 18-4, at 124.

Plaintiff argues his solitary confinement was impermissibly extended because the investigation into the September 24 event had concluded.

Defendants first note that, when accounting for the two days Plaintiff spent in the BHU on suicide watch, Plaintiff was actually only in STRH for 15 days. Dkt. 30, at 6. The additional time Plaintiff spent in STRH after the DOR was dismissed was on "transit status," which "IDOC policy excludes from restrictive housing time limits." *Id*. at 7.

IDOC policy states:

MEMORANDUM DECISION AND ORDER - 7

> An inmate may remain in a restrictive housing unit while on transit status awaiting a bunk opening in the appropriate housing unit and custody level. When an inmate is released from restrictive housing, but will remain in the restrictive housing unit on transit status, staff must complete a *Restrictive Housing Release to Transit Form*. Transit status is not a form of restrictive housing even if the inmate remains in the restrictive housing unit.

Dkt. 18-4, at 125.

Thus, it cannot be said IDOC violated its policy or that Plaintiff was held in restrictive housing longer than necessary. By all accounts, IDOC followed its policy precisely as intended. Thus, even though Plaintiff remained housed in the STRH—and was subject to its stricter conditions—that time did not fall within the restrictive status.

That Plaintiff had to remain in STRH until a bed became available in general population is not a violation of his constitutional rights. *See Carr v. Lytle*, 2024 WL 989697, at *4 (D. Idaho Mar. 7, 2024) (finding the hardship to an inmate housed in segregation pending investigation for 36 days was "low to moderate, given that—although not a constitutional standard—15 days seems to be recognized generally as a reasonable time frame by the IDOC."). Thus, while 15 days may be the aspiration goal for inmates housed in restrictive housing, a longer timeframe may be necessary and is not unconstitutional.

Importantly, Plaintiff continued to have access to mental health care and did not lose "good-time credits or other tangible liberty interests." Dkt. 30, at 2, 7. There is nothing in the record to suggest Plaintiff was held in STRH for any purpose other than to wait for a bunk in general population to become available. It was not extra punishment. It was not unconstitutional. It was simply the result of the ratio of beds to inmates.

MEMORANDUM DECISION AND ORDER - 8

Moreover, a Plaintiff does not have a constitutional liberty interest in "being free from segregation in prison" and must "show he suffered an atypical and significant hardship that implicates a state-created liberty interest." *Carr*, 2024 WL 989697 at *3. To determine whether an atypical and significant hardship occurred, courts apply the *Sandin-Serrano* test which analyzes: (1) the extent of difference between segregation and general population; (2) the duration and intensity of the conditions of confinement; and (3) whether the sanction extends the length of the prisoner's sentence. *Id.* (citing *Cepero v. High Desert State Prison*, 2015 WL 1308690 at *14 (D. Nev. Mar. 24, 2015). *See also Sandin v. Conner*, 515 U.S. 472, 486–87 (1995); *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

First, Eighth Amendment violations occur "by prolonged or indefinite confinement only when basic nutrition, sanitation, and health standards are ignored or when the segregated confinement bears no reasonable relation to the purpose for which a prisoner is committed." *Carr,* 2024 WL 989697 at *3 (quoting *Bukhari v. Hutto*, 487 F. Supp. 1162, 1169 (E.D. Va. 1980)). Here, there are no facts that suggest Plaintiff did not receive basic nutrition, sanitation, or that health standards were ignored while he was in STRH. Furthermore, throughout the entirety of Plaintiffs incarnation, he had "access to routine and emergency mental health assessments, medication management by psychiatric providers, in-person counseling, crises intervention (including suicide watch), and the ability to submit HSRs for mental health needs at any time, and all his requests were addressed in accordance with IDOC policy." Dkt. 18-2, at 9.

Second, the "intensity" of the conditions is minimal for the same reasons. Again, Plaintiff was not deprived of basic human rights nor were any of his needs ignored. And as

MEMORANDUM DECISION AND ORDER - 9

for the duration of confinement, the burden was low—as already explained.

The third *Sandin-Serrano* factor is whether any time in solitary confinement extends the length of the person's sentence. In this case, Plaintiff's time in STRH did not extend the length of his sentence. Additionally, Plaintiff did not lose any good-time credits.

In sum, the Court finds the *Sandin-Serrano* factors support the conclusion that there was no constitutional violation under the Eighth Amendment.

As the Court noted at oral argument, while the parties briefed a Fourteenth Amendment claim, Plaintiff's Complaint does not actually state a Fourteenth Amendment violation. *See generally* Dkt. 1. In Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Dkt. 27), he simply alleges his Fourteenth Amendment rights were violated; there are no details. Nevertheless, for the reasons explained above, the Court finds there was no Fourteenth Amendment violation either.

Despite having concluded there was no constitutional violation in the broader sense, the Court will now specifically address Davis's role.

Plaintiff asserts that because Davis was the warden at the time of this incident, he was responsible for the operations at ISCI, which included housing. Dkt. 27, at 9. Plaintiff alleges the 15-day limit on solitary confinement was not invoked as to C.J.H. and that this "partial application of IDOC policies evidences a deliberate indifference to Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment." *Id*.

Davis asserts he did not make initial classifications or housing decisions for Plaintiff or C.J.H. as those decisions were made by "shift commanders, mental-health professionals,

MEMORANDUM DECISION AND ORDER - 10

and classification staff." Dkt. 30, at 5. Davis also explained that he reviews DORs on appeal, but that Plaintiff's DOR was dismissed before it reached him. *Id*. Simply put, Davis claims he has no memory of Plaintiff's DOR and was not involved in his housing placement. *Id*. Plaintiff himself admitted he does not know whether Davis was aware of his segregated housing assignment and could not identify anything Davis should have known or done regarding his DOR. Dkt. 18-6, at 12–13.

Plaintiff has failed to show how Davis violated his Eighth and Fourteenth Amendment rights. There are no facts supporting that Davis had anything to do with Plaintiff's DOR, classification, disciplinary proceedings, or stay in STRH. Plaintiff gives a generalized claim that Davis was responsible for the operations at ISCI, including housing, because he was Warden. Dkt. 27, at 9. However, Plaintiff has not provided any evidence that would show Davis had personal involvement in the housing of Plaintiff or that Davis acted with deliberate indifference towards Plaintiff.

Additionally, nothing suggests Davis did anything outside his job responsibilities that would constitute deliberate indifference towards Plaintiff. Davis testified his responsibilities as Warden were limited to facility management and "did not include direct involvement in inmate classification, housing assignments, or initial decisions to place inmates in restrictive housing." Dkt. 18-2, at 7. Furthermore, Davis testified he did not "review medical records, concern forms, or grievances in the ordinary course, and only saw such materials if they were included in a disciplinary appeal packet." *Id*.

In sum, there are no facts supporting either an Eighth or Fourteenth Amendment violation here. Having to spend an additional 10 days in STRH while waiting for a bed to

MEMORANDUM DECISION AND ORDER - 11

become available was a low hardship on Plaintiff. Furthermore, what little oversight Davis had in Plaintiff's housing assignment was part of his regular duties and nothing in the record indicates the actions he took rose to the level of a constitutional violation.

### C. Qualified Immunity

Finally, Davis is entitled to qualified immunity. Qualified immunity shields federal and state officials from personal liability unless a plaintiff shows: (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd* 563 U.S. 731, 735 (2011) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For a right to be clearly established, "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton* 483 U.S. 635, 640 (1987).

Plaintiff has not satisfied either prong. First, Plaintiff failed to show that Davis violated any statutory or constitutional right while acting as warden. Again, there are no facts suggesting Davis even had anything to do with Plaintiff's placement in STRH. Davis's responsibilities as warden consisted of overall facility administration. Dkt. 30, at 8. Davis was not responsible for "initial housing, classification, or disciplinary decisions." *Id*. Furthermore, Plaintiff cannot identify anything Davis should have done regarding the DOR or housing status. *Id.*

Next, Plaintiff has failed to show Davis violated a right that was "clearly established." He cites no precedent putting reasonable wardens on notice that placing an inmate in short-term restrictive housing pending investigation or holding him on administrative transit status due to bed shortages, violates constitutional rights. Because no

MEMORANDUM DECISION AND ORDER - 12

case law makes the alleged unconstitutionality "beyond debate," *al-Kidd*, 563 U.S. at 741, Davis is entitled to qualified immunity.

### D. Conclusion

The Court finds Davis has carried his burden for a finding of summary judgment on Plaintiff's single remaining claim. There was no Eighth or Fourteenth Amendment violation here, Davis was not involved in Plaintiff's housing or DOR process, and Davis is entitled to qualified immunity.

Accordingly, Defendants' Motion for Summary Judgment (Dkt. 18) is GRANTED.

### V. ORDER

The Court HEREBY ORDERS:

1. The Defendants' Motion for Summary Judgment (Dkt. 18) is GRANTED. There are no significant disputed material facts that preclude summary judgment.

2. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: May 4, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 13